```
                    FILED
              CLERK, U.S. DISTRICT COURT

                   12/06/2024

              CENTRAL DISTRICT OF CALIFORNIA
              BY:    E.C.       DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | No. **8:24-cr-00137-JWH** |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Mail Fraud; 26 U.S.C. § 7206(1): Subscribing to a False Tax Return; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 26 U.S.C. § 7301: Criminal Forfeiture] |
| KEVIN TIEN DO, | |
| Defendant. | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1. Defendant KEVIN TIEN DO was a licensed physician in the state of California.

2. Co-Conspirator #1 was a licensed California attorney until late 2022, when seated as an Orange County Superior Court Judge, but Co-Conspirator #1 was not a physician or other medical professional.

3. Liberty Medical Group Inc. (Liberty) was a medical

corporation incorporated in November 2015 in California.  Under California law, shareholders/owners of a medical corporation must be licensed in the practice of medicine or other related medical fields, such as a psychologist, registered nurse, or licensed physician assistant.

4.   California's Subsequent Injuries Benefits Trust Fund (SIBTF) is a special fund administered by the California Division of Workers' Compensation (DWC), which is a division of the California Department of Industrial Relations (DIR), a California state agency responsible for administering and enforcing laws governing wages, overtime, workplace safety, medical care and other benefits for injured workers.  The SIBTF provides additional compensation to injured workers who already had a disability or impairment at the time of a subsequent injury.  The SIBTF exists to enable employers to hire disabled workers without fear of being liable for the effects of previous disabilities or impairments.  The SIBTF benefits are disbursed from an account controlled by the state of California that receives its funding from assessments on employers.  In 2023, the total assessments for the SIBTF was more than $480 million.

5.   In 2003, defendant DO was convicted of federal health care fraud, a felony violation of 18 U.S.C. § 1347, for which he was sentenced to 12 months of prison.

6.   On or about October 19, 2018, the Administrative Director of the California DWC issued a final order that suspended defendant DO from participating in California's workers' compensation system, which included the SIBTF.  Defendant DO received that Order by certified mail on or about October 19, 2018.

7.   These Introductory Allegations are incorporated into all

counts of this Information.

B. OBJECT OF THE CONSPIRACY

8. Beginning on an unknown date but no later than on or about October 19, 2018, and continuing through at least in or around February 2023, in Orange, Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendant KEVIN TIEN DO and Co-Conspirator #1, together with others known and unknown to the United States Attorney, knowingly conspired to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

C. THE MANNER AND MEANS OF THE CONSPIRACY

9. The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

    a. Defendant DO would draft and prepare medical-legal reports for Liberty, which Liberty would then mail to the California SIBTF with billing forms, requesting payment.

    b. Co-Conspirator #1 would own, operate, and control Liberty, a medical corporation, even though under California law, Co-Conspirator #1 was not allowed to do so, because Co-Conspirator #1 was not a physician or other medical professional.

    c. Defendant DO and Co-Conspirator #1 would conceal from the California SIBTF that Co-Conspirator #1 was the actual owner of Liberty by using defendant DO as the front doctor.

    d. Notwithstanding his October 2018 suspension from participating in California's workers' compensation program, which included the SIBTF program, defendant DO would continue to work for Liberty on workers' compensation matters, including drafting and preparing SIBTF-related medical-legal reports.

      e. To conceal that defendant DO was continuing to work on SIBTF-related reports, defendant DO and Co-Conspirator #1 would stop listing defendant DO's name on the reports or the forms that Liberty mailed to the California SIBTF for payment.

      f. Instead, defendant DO and Co-Conspirator #1 would list other doctors' names on those reports and forms mailed by Liberty to the California SIBTF for payment, even though defendant DO was the actual doctor who was authoring the reports.

      g. Defendant DO, Co-Conspirator #1, and others known and unknown to the United States Attorney would communicate by text and email messages about the fraudulent conspiracy, including the substance of SIBTF-related reports that defendant DO was authoring after the date of his suspension from participating in California's workers' compensation program.

      h. Co-Conspirator #1 would hire other physicians and employees of Liberty and would sign checks from Liberty to other doctors and employees, including to defendant DO.

      i. Liberty would pay defendant DO a total of more than $300,000 for drafting and preparing SIBTF-related medical reports after the date he had been permanently suspended from participating in California's workers' compensation program.

D. <u>OVERT ACTS</u>

    10. On or about the following dates, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant DO, Co-Conspirator #1, and others known and unknown to the United States Attorney committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

4

Overt Act No. 1: In around April 2016, defendant DO and Co-Conspirator #1 opened a business bank account in the name of Liberty at Wells Fargo Bank, N.A., over which Co-Conspirator #1 had signature authority.

Overt Act No. 2: On or about July 28, 2019, defendant DO and Co-Conspirator #1 discussed in an email message what to write in medical reports of patients, including Co-Conspirator #1 making notes in the proposed medical report that defendant DO had drafted. In that email message, Co-Conspirator #1 directed defendant DO: "Prophylactic preclusions (retroactive) don't work unless there is substantial evidence to support them. However, if a patient has labor disabling restrictions that are pre-existing, I would point to what restrictions they had, even if their job was not affected at the time. The patient could have been working through such a restriction, but once they left that job, the patient could not compete in the labor market. Take a look at the notes in the margins."

Overt Act No. 3: On or about August 8, 2019, defendant DO sent an email message to Co-Conspirator #1 and Co-Conspirator #1's wife, with subject line "Report on [patient R.D.]," wherein in the body of the email, defendant DO wrote "I need to discuss about this case."

Overt Act No. 4: On or about August 4, 2020, Co-Conspirator #1 issued and signed a check from Liberty payable to defendant DO with memo line listing the name of a patient (M.P.) whose medical report had been prepared by defendant DO, which Liberty mailed to the SIBTF program seeking payment.

Overt Act No. 5: On or about May 12 and 13, 2021, in an email

message chain, defendant DO and Co-Conspirator #1 discussed additional requirements for reports being submitted to the SIBTF, including that "SIBTF is requiring substantive proof than an evaluating physician personally review all medical records." In that email chain, defendant DO asked Co-Conspirator #1 "Should I do something like this from now on??", to which Co-Conspirator #1 answered: "I think that's a good idea. The regulations ask for it."

<u>Overt Act No. 6</u>:   After the date of defendant DO's October 2018 suspension from participating in California's workers' compensation program, from around January 2019 through February 2023, Liberty submitted more than 650 bills to the California SIBTF, many of which included reports authored by defendant DO but which listed other doctors' names, which caused California to pay Liberty a total of more than $3 million for SIBTF billings, including approximately $1.3 million in 2019, $1.2 million in 2020, and $499,000 in 2021.

## COUNT TWO

[26 U.S.C. § 7206(1)]

11. On or about June 1, 2022, in Los Angeles County, within the Central District of California, defendant KEVIN TIEN DO willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for defendant DO for tax year 2021, which was verified by a written declaration from defendant DO that it was made under the penalties of perjury, and which defendant DO filed with the Internal Revenue Service, knowing the tax return was not true and correct as to every material matter contained therein, in that the tax return failed to report approximately $66,227 in income.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property sold or removed by the defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

(b) All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

(c) All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

(d) All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

(e) Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment of

1 | property described in subsection (a) or (b), or any property used to
2 | transport or for the deposit or concealment of property which is
3 | intended to be used in the making or packaging of property described
4 | in subsection (a); and
5 |          (f)  To the extent that such property is not available for
6 | forfeiture, a sum of money equal to the total value of the property
7 | described in this paragraph.
8 |     3.   Pursuant to Title 21, United States Code, Section 853(p),
9 | as incorporated by Title 28, United States Code, Section 2461(c), the
10 | defendant, if so convicted, shall forfeit substitute property, up to
11 | the total value of the property described in the preceding paragraph
12 | if, as the result of any act or omission of the defendant, the
13 | property described in the preceding paragraph, or any portion thereof
14 | (a) cannot be located upon the exercise of due diligence; (b) has
15 | been transferred, sold to or deposited with a third party; (c) has
16 | been placed beyond the jurisdiction of the court; (d) has been
17 | //
18 | //

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney

*/s/ Mack E. Jenkins/*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

ANNE C. GANNON
Assistant United States Attorney
Chief, Orange County Office

CHARLES E. PELL
Assistant United States Attorney
Orange County Office